## THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| CANDIS EHDE, an individual; | § | Case No.: 1:22-cv-870 |
| CASSANDRA LONG, an individual; | § | |
| CRYSTAL LONSDORF, an individual; | § | |
| | § | **COLLECTIVE ACTION** |
| Plaintiffs, | § | |
| vs. | § | JURY TRIAL DEMANDED |
| | § | |
| RPM DINING, LLC dba YELLOW | § | |
| ROSE, a Texas Limited Liability | § | |
| Company; MIKE PERSINGER, an | § | |
| individual, | § | |
| Defendants. | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs CANDIS EHDE, CASSANDRA LONG, and CRYSTAL LONSDORF (hereinafter collectively "Plaintiffs"), and on behalf of all others similarly situated, allege the following upon information and belief, based upon investigation of counsel, published reports, and personal knowledge:

## I.   NATURE OF THE ACTION

1.   Plaintiffs alleges causes of action against Defendant RPM DINNING, LLC dba YELLOW ROSE and MIKE PERSINGER (hereinafter collectively "Defendants") for damages resulting from Defendants evading the mandatory minimum wage and other provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*("FLSA"), and illegally absconding with Plaintiffs' tips.

2.   Defendants own and operate a strip club named YELLOW ROSE. Plaintiff CANDIS EHDE was employed by Defendants from approximately July 2017 through March 2020. Plaintiff CASSANDRA LONG worked from approximately March 2013 through February 2020. Plaintiff CRYSTAL LONSDORF worked from approximately January 2017

through September 2020. These causes of action arise from Defendants' willful actions while Plaintiffs worked at YELLOW ROSE. Their willful violations have been found to exist by a jury in the Western District of Texas. These actions still continue to this day. Throughout their employment with Defendants, Plaintiffs have been denied minimum wage payments as part of Defendants scheme to classify Plaintiff and other dancers/entertainers as "independent contractors." As the Department of Labor explained in a recent  Administrative Interpretation:

> Misclassification of employees as independent contractors is found in an increasing number of workplaces in the United States, in part reflecting larger restructuring of business organizations. When employers improperly classify employees as independent contractors, the employees may not receive important workplace protections such as the minimum wage, unemployment insurance, and workers' compensation. Misclassification also results in lower tax revenues for government and an uneven playing field for employers who properly classify their workers. Although independent contracting relationships can be advantageous for workers and businesses, some employees may be intentionally misclassified as a means to cut costs and avoid compliance with labor laws.

As alleged in more detail below, that is exactly what the Defendants is doing in this case.

3.      Plaintiffs worked at Defendants' principal place of business located at 6528 N. Lamar Blvd, Austin, TX. 78757.

4.      Defendants failed to pay Plaintiffs minimum wages for all hours worked in violation of 29 U.S.C. §§ 206 of the FLSA.

5.      Furthermore, Defendants' practice of failing to pay tipped employees pursuant to 29 U.S.C. § 203(m), violates the FLSA's minimum wage provision. *See* 29 U.S.C. § 206.

6.      Defendants also charged Plaintiffs to work. Yes, in the United States, Plaintiffs were required to pay just to work. This illegal kickback was designated a house fee and would range in costs/tax to the Plaintiffs depending on the time they arrived. So, it was also used as a method of control. This violates the "free and clear" requirement of 29 C.F.R. § 531.35.

7.     Defendants also would have the Plaintiffs and other dancers subsidized the clubs' employment costs by forcing them to tip DJs, managers, security and other personnel. The Defendants saved labor costs by having one set of their employees pay another set.

8.     Defendants, took a percentage of the gratuities and tips earned by the Plaintiffs, also in violation of the FLSA.

9.     Lastly, Defendants had a scheme where they would earn fees from clients' credit cards in exchange for "funny money", or an inhouse currency to exchange for dances from the employees. YELLOW ROSE would charge the customers more than the difference from the merchant bank credit card charges. When dancers attempted to cash a hundred dollars of funny money (which was for the same services as a customer paying straight $100 cash), the club would not just cause the dancers to pay for the merchant fees, but in excess of those fees.

10.     Plaintiffs bring a collective action to recover the unpaid overtime compensation and minimum wage owed to her individually and on behalf of all other similarly situated employees, current and former, of Defendants. Members of the Collective Action are hereinafter referred to as "FLSA Class Members."

11.     As a result of Defendants' violations, Plaintiffs and the FLSA Class Members seek to recover double damages for failure to pay minimum wage, interest, and attorneys' fees.

## II.   __PARTIES__

12.     Plaintiffs are individual adult residents of the State of Texas. Furthermore, Plaintiff is employed by Defendants and qualifies as an "employee" of Defendants as defined by the FLSA, 29 U.S.C. § 203(e)(1).

13.     The FLSA Class Members are all current and/or former exotic dancers who worked at the Yellow Rose, 6528 N. Lamar Blvd, Austin, TX 78757 at any time starting three

(3) years prior to the filing of this complaint.

14.     RPM Dining, LLC is a Texas Limited Liability Company with its principal place of business at 6901 N. Lamar Blvd, Suite 115, Austin, TX. 78752. At all times mentioned herein, RPM Dining, LLC was an "employer" or "joint employer" as defined by the FLSA, 29 U.S.C. § 203(d) and (g). RPM Dining, LLC. may be served via its agent for service of process, Jon Persinger, 6528 N. Lamar, Austin, TX. 78752.

15.     MIKE PERSINGER is an owner/manager of RPM Dining, LLC and dba Yellow Rose and may be served at 6528 N. Lamar, Austin, TX 78752. He resides in Texas and Mexico.

16.     MIKE PERSINGER was/is the main manager/owner who instituted the policies regarding payment to dancers and management of dancers, including Plaintiffs.

17.     MIKE PERSINGER acted directly or indirectly on behalf of Yellow Rose, and, at all times mentioned herein was an "employer" or "joint employer" of Plaintiffs within the meaning of the FLSA. He exerted operational and management control over Defendants, including day to day management. He was, and is, frequently present at, owned, directed, controlled and managed the operations at Defendants. He also controlled the nature, pay structure, and employment relationship of Plaintiffs and the FLSA Class Members. He had at all times relevant to this lawsuit, the authority to hire and fire employees at Defendants, the authority to direct and supervise the work of employees, the authority to sign on the business' checking accounts, including payroll accounts, and the authority to make decisions regarding employee compensation and capital expenditures. Additionally, he was responsible for the day-to-day affairs of Defendants. In particular, he was responsible for determining whether Defendants complied with the FLSA.

18.     The true names, capacities or involvement, whether individual, corporate,

governmental or associate, of all managers and owners of Defendants are unknown to Plaintiffs. Plaintiffs pray for leave to amend this Complaint to show their true names and capacities when the same have been finally determined. Plaintiffs are informed and believe, and upon such information and belief alleges thereon, that each of the unknown Defendants is negligently, intentionally, strictly liable or otherwise legally responsible in some manner for the events and happenings herein referred to, and negligently, strictly liable intentionally or otherwise caused injury and damages proximately thereby to Plaintiffs, as is hereinafter alleged.

19.     At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(r)(1) of the FLSA because they have had employees at their club engaged in commerce, which has travelled in interstate commerce. Moreover, because of Defendants' interrelated activities, they function in interstate commerce. 29 U.S.C. § 203(s)(1).

20.     Furthermore, Defendants have had, and continue to have, an annual gross business volume in excess of the statutory standard.

21.     At all material times during the three (3) years prior to the filing of the original action, Defendants categorized all dancers/entertainers employed by Defendants as "independent contractors" and have failed and refused to pay wages or compensation to such dancers/entertainers. Plaintiffs were individual employees who engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206.

22.     Plaintiffs are informed and believe that, at all relevant times herein, Defendants engaged in the acts alleged herein and/or condoned, permitted, authorized, and/or ratified the conduct of its employees and agents, and other Defendants and are vicariously or strictly liable for the wrongful conduct of its employees and agents as alleged herein.

23.     Plaintiffs are informed and believe, and on that basis allege that, each of the Defendants acted, in all respects pertinent to this action, as the agent or employee of each other, and carried out a joint scheme, business plan, or policy in all respect thereto and, therefore, the acts of each of these Defendants are legally attributable to the other Defendants, and that these Defendants, in all respects, acted as employers and/or joint employers of Plaintiffs in that each of them exercised control over her wage payments and control over her duties.

24.     Plaintiffs are informed and believe, and on that basis allege that, at all relevant times, each and every Defendant has been the agent, employee, representative, servant, master, employer, owner, agent, joint venture, and alter ego of each of the other and each was acting within the course and scope of his or her ownership, agency, service, joint venture and employment.

25.     At all times mentioned herein, each and every Defendant was the successor of the other and each assumes the responsibility for the acts and omissions of all other Defendant.

## III.   <u>VENUE AND JURSIDICTION</u>

26.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 because this action arises under the FLSA, 29 U.S.C. §§ 201, *et seq*.

27.     Venue is proper in this District because all or a substantial portion of the events forming the basis of this action occurred in this District. Defendants' club is located in this District and Plaintiffs worked in this District.

## IV.   <u>ALLEGATIONS COMMON TO ALL CAUSES OF ACTION</u>

### (AGAINST ALL DEFENDANTS)

####   A.   FACTUAL ALLEGATIONS

28.     Defendant operates an adult-oriented entertainment facility located at 6528 N. Lamar

Blvd, Austin, TX. 78757.   The picture below depicts the outside of the Club.



29.    At all times mentioned herein, Defendants were "employer(s)" or "joint employer(s)" of Plaintiffs.

30.    At all times during the three (3) years prior to the filing of the instant action, Defendants categorized all dancers/entertainers employed by Defendants as "independent contractors" and have failed and refused to pay wages to such dancers.

31.    At all times relevant to this action, Defendants exercised a great deal of operational and management control over the subject club, particularly in the areas of terms and conditions of employment applicable to dancers and entertainers.

32.    Plaintiff Edhe was employed by Defendants from approximately July 2017 through March 2020. Plaintiff Long worked from approximately March 2013 through February

2020. Plaintiff Lonsdorf worked from approximately January 2017 through September 2020. Their consents to join are being filed contemporaneously with this Complaint.

33.     The primary duty of an entertainer is to dance and entertain customers, and give them a good experience. Specifically, an entertainer performs stage and table dances, and entertains customers on an hourly basis.

34.     Stated differently, entertainers dance on stage, perform table dances, and entertain customers in VIP rooms, all while nude or semi-nude.

35.     Plaintiffs worked and performed at the adult-oriented entertainment facility multiple shifts per week. Plaintiffs were an integral part of Defendants' business which operated solely as an adult-oriented entertainment facility featuring nude or semi-nude female entertainers.

36.     Defendants did not pay entertainers on an hourly basis.

37.     Defendants exercised significant control over Plaintiffs during their shifts, and Defendants required Plaintiffs to work an entire shift.

38.     Defendants set prices for all VIP performances.

39.     Defendants charge the dancers a late fee if they do not arrive for a shift on time.

40.     Defendants controlled the means and manner in which Plaintiffs could perform.

41.     Defendants had the authority to suspend, fine, fire, or otherwise discipline entertainers for non-compliance with their rules regarding dancing.

42.     Defendants actually suspended, fined, fired, or otherwise disciplined entertainers for non-compliance with their rules regarding dancing.

43.     Plaintiffs were compensated exclusively through tips from Defendants' customers. That is, Defendants did not pay Plaintiffs whatsoever for any hours worked at their

establishment.

44.     Defendants also required Plaintiffs to share her tips with Defendants, other non-service employees who do not customarily receive tips, including the managers, disc jockeys, and the house mother.

45.     Defendants are in violation of the FLSA's tipped-employee compensation provision, 29 U.S.C. § 203(m), which requires employers to pay a tipped employee a minimum of $2.13 per hour. Defendants also violated 29 U.S.C. § 203(m) when they failed to notify the Plaintiffs about the tip credit allowance (including the amount to be credited) before the credit was utilized. That is, Defendants' exotic dancers were never made aware of how the tip credit allowance worked or what the amounts to be credited were. Furthermore, Defendants violated 29 U.S.C. § 203(m) because they did not allow Plaintiffs to retain all of her tips and instead required that she divide her tips amongst other employees who do not customarily and regularly receive tips. Because Defendants violated the tip-pool law, Defendants loses the right to take a credit toward minimum wage.

46.     Defendants provided and paid for all advertising and marketing efforts undertaken on behalf of Defendants.

47.     Defendants paid for the building used by Defendants' maintenance of the facility, the sound system, stages, lights, beverages and inventory used at the facility.

48.     Defendants made all hiring decisions regarding wait staff, security, entertainers, managerial and all other employees on the premises.

49.     Defendants' opportunity for profit and loss far exceeded Plaintiffs' opportunity for profit and loss from work at Yellow Rose.

50.     Nude dancing is an integral part of Defendants' operations. Defendants'

advertising prominently displays nude dancing for its customers. Yellow Rose is well known as a "strip club."

51.     Defendants need entertainers to successfully and profitably operate their business model.

52.     The position of entertainer requires no managerial skill of others.

53.     The position of entertainer requires little other skill or education, formal or otherwise.

54.     The only requirements to become an entertainer at are "physical attributes" and the ability to dance seductively. The amount of skill required is more akin to an employment position than that of a typical independent contractor.

55.     Defendants failed to maintain records of wages, fines, fees, tips and gratuities and/or service charges paid or received by entertainers.

56.     Plaintiffs were not paid an hourly minimum wage or *any* hourly wage or salary despite being present at Defendants' facility and required to work and entertain its customers at any time during a seven-plus (7+) hour work shift.

57.     The FLSA Class Members had the same pay structure and were under the same controls as Plaintiffs.

58.     Defendants have never paid Plaintiffs and the FLSA Class Members any amount as wages whatsoever, and have instead unlawfully required Plaintiffs and FLSA Class Members to pay them for the privilege of working.

59.     The only source of monies received by Plaintiffs (and the class she seeks to represent) relative to their employment with Defendants came in the form of gratuities received directly from customers, a portion of which Plaintiffs and the FLSA Class Members were

required to pay to Defendants.

60.     Defendants' method of paying Plaintiffs in violation of the FLSA was willful and was not based on a good faith and reasonable belief that its conduct complied with the FLSA. Defendants misclassified Plaintiffs with the sole intent to avoid paying them in accordance to the FLSA; the fees and fines described herein constitute unlawful "kickbacks" to the employer within the meaning of the FLSA, and Plaintiffs are entitled to restitution of such fines and fees.

61.     Plaintiffs and FLSA Class Members who worked at Yellow Rose performed precisely the same job duties - dancing and entertaining at Yellow Rose.

62.     Plaintiffs and FLSA Class Members who worked at Yellow Rose during the applicable limitations period(s) were subject to the same work rules established by the Defendants as identified above.

63.     Plaintiffs and FLSA Class Members at Yellow Rose were subject to the terms and conditions of employment and the same degree of control, direction, supervision, promotion and investment imposed or performed by Defendants.

64.     Plaintiffs and FLSA Class Members at Yellow Rose during the applicable limitations period(s) were subject to the same across-the-board, uniformly applied corporate policy mandated by Defendants.

65.     Plaintiffs and the FLSA Class Members at Yellow Rose, during the applicable limitations period, were subject to the same fees and fines imposed by Defendants.

66.     As a result of Defendants' across-the-board, standard operating procedure of mischaracterizing dancers/entertainers as "independent contractors" and their consequent failure to pay any wages or compensation whatsoever, it is a certainly that numerous other current and former dancers and entertainers who worked at Yellow Rose during the applicable limitations

period would elect to participate in this action if provided notice of same.

67.     Upon information and belief, more than one hundred (100) dancers and entertainers have worked at Yellow Rose during the three (3) years prior to the filing of this action.

68.     Plaintiffs are "similarly situated" to the 29 U.S.C. § 216(b) class of persons they seeks to represent, and will adequately represent the interests of the class.

69.     Plaintiffs have hired Counsel experienced in class actions and in collective actions under 29 U.S.C. § 216(b) who will adequately represent the class.

70.     Defendants failed to keep records of tips, gratuities and/or service charges paid to Plaintiffs or any other entertainer and failed to maintain and furnish wage statements to Plaintiffs.

71.     Federal law mandates that an employer is required to keep for three (3) years all payroll records and other records containing, among other things, the following information:

a.     The time of day and day of week on which the employees' work week begins;

b.     An explanation of the basis of pay by indicating the monetary amount paid on a per hour, per day, per week, or other basis;

c.     The amount and nature of each payment which, pursuant to section 7(e) of the FLSA, is excluded from the "regular rate";

d.     The hours worked each workday and total hours worked each workweek;

e.     The total daily or weekly straight time earnings or wages due for hours worked during the workday or workweek;

f.     The total additions to or deductions from wages paid each pay period including employee purchase orders or wage assignments;

g.      The dates, amounts, and nature of the items which make up the total additions and

deductions;

h.      The total wages paid each pay period; and

i.      The date of payment and the pay period covered by payment.

29 C.F.R. 516.2, 516.5.

72.     Defendants have not complied with federal law and have failed to maintain such records with respect to Plaintiffs and the FLSA Class Members. Because Defendants' records are inaccurate and/or inadequate, Plaintiffs and the FLSA Class Members can meet their burden under the FLSA by proving that they, in fact, performed work for which they were improperly compensated, and produce sufficient evidence to show the amount and extent of their work "as a matter of a just and reasonable inference." *See, e.g., Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). Plaintiffs seek to put Defendants on notice that she intends to rely on *Anderson* to provide the extent of her unpaid work.

73.     Importantly, Defendants have recently been held liable and found liable for these same offenses towards similar employees to Plaintiffs in a recent case litigated in this jurisdiction. *See 1:20-CV-890-RP*. In that case, Yellow Rose was found to have: (1) failed to pay dancers the minimum wage required by law; (2) knew its conduct was prohibited by the FLSA or showed reckless disregard for whether the FLSA prohibited its conduct; (3) coerced dancers to pay Yellow Rose, including any person acting directly or indirectly in the interest of the employer, any portion of dancers' tips; and (4) coerced dancers to pay fees or fines to Yellow Rose for Yellow Rose's benefit. Given Plaintiffs worked at Yellow Rose during the same time they were held liable for the aforementioned violations in the previous case, it is reasonable to believe Plaintiffs suffered similar harm.

74.     In *Montano v. Montrose Rest. Assocs.*, the U.S. Court of Appeals for the Fifth Circuit held an employer can only claim a tip credit if "all tips received by a [tipped] employee have been retained by the employee." *See Montano v. Montrose Rest. Assocs.*, 800 F.3d 186, 188 (5th Cir. 2015). Moreover, the Fifth Circuit has also determined an employer violates §203(m)(2) when it offsets credit tips to recover costs that exceed the direct fees charged by the credit card companies when the such costs are found to be a "business decision, not a fee directly attributable to its cost of dealing in credit." *See Steele v. Leasing Enterprises, Ltd.*, 826 F.3d 237, (5th Cir. 2016).

75.     Pursuant to 29 U.S.C. §§203(m)(2). 206(a)(1); 29 C.F.R. §§531.52, 531.59, and supporting case law, Defendants improperly and willfully claimed a tip credit when Plaintiffs did not retain all tips they earned while they were employees at Yellow Rose. Defendants improperly and willfully claimed these tip credits as a fee directly attributable to Yellow Rose's cost of dealing in credit, instead of the business decision Defendants made in dealing with credit card payments.

**B.     INDIVIDUAL LIABILITY UNDER THE FLSA**

76.     In *Lamonica v. Safe Hurricane Shutters, Inc.*, the U.S. Court of Appeals for the Eleventh Circuit held that individuals can be liable for FLSA violations under an expansive interpretation of "employer" for directors and officers. *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299 (11th Cir. 2013). The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The Fifth Circuit stated "[t]he dominant theme in the case law is that those who have operating control over employees within companies may be individually liable for FLSA violations committed by the companies." *Gray v. Powers*, 673 F.3d 352, 357 (5th Cir. 2012).

77.     Where an individual exercises "control over the nature and structure of the employment relationship," or "economic control" over the relationship, that individual is an employer within the meaning of the FLSA and is subject to liability. *Lambert v. Ackerley* 180 F.3d 997 (9th Cir. 1999) Factors related to "economic control," which included ownership interest, operational control of significant aspects of the day-to-day functions, the power to hire and fire employees, determine salaries, and the responsibility to maintain employment records. *Gray*, 673 F.3d at 355 (citing *Williams v. Henagan*, 595 F.3d 610, 615 (5th Cir. 2010).

78.     Mike Persinger is individually liable for failing to pay Plaintiffs her wages. As stated before, Plaintiff swill be amending to include individuals liable pursuant to *Gray v. Powers*, 673 F.3d 352, 357 (5th Cir. 2012).

V.     **COLLECTIVE ACTION ALLEGATIONS**

79.     Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in paragraphs 1-80 as though fully set forth herein.

80.     Plaintiffs bring this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons who were or are employed by Defendants as exotic dancers/entertainers at any time during the three (3) years prior to the commencement of this action to present.

81.     Plaintiffs have actual knowledge that FLSA Class Members have also been denied pay at the federally mandated minimum wage rate. That is, Plaintiffs worked with other dancers/entertainers at Yellow Rose. As such, they have firsthand personal knowledge of the same pay violations throughout Defendants' club. Furthermore, other exotic dancers/entertainers at Defendants' club have shared with her similar pay violation experiences as those described in this Complaint.

82.     Other employees similarly situated to Plaintiffs work or have worked at Yellow Rose but were denied pay at the federally mandated minimum wage rate. The other employees were forced to pay house fees, subsidize Defendants employment costs by being forced to pay their tips to other employers, and then pay a percentage of their tips to Defendants.

83.     Although Defendants permitted and/or required the FLSA Class Members to work in excess of forty (40) hours per workweek, Defendants have denied them full compensation at the federally mandated minimum wage rate.

84.     FLSA Class Members perform or have performed the same or similar work as the Plaintiff.

85.     FLSA Class Members regularly work or have worked in excess of forty (40) hours during a workweek.

86.     FLSA Class Members regularly work or have worked and did not receive minimum wage.

87.     FLSA Class Members are not exempt from receiving pay at the federally mandated minimum wage rate under the FLSA.

88.     As such, FLSA Class Members are similar to Plaintiffs in terms of job duties, pay structure, misclassification as independent contractors and/or the denial of minimum wage.

89.     The experiences of the Plaintiffs, with respect to her pay, are typical of the experiences of the FLSA Class Members.

90.     The specific job titles or precise job responsibilities of each FLSA Class Member does not prevent collective treatment.

91.     All FLSA Class Members, irrespective of their particular job requirements, are entitled to compensation for hours worked at the federally mandated minimum wage rate.

92.     Although the exact number of damages may vary among FLSA Class Members, the damages for the FLSA Class Members can be easily calculated by a simple formula. The claims of all FLSA Class Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by the Defendants that caused harm to all FLSA Class Members.

93.     As such, Plaintiffs brings her FLSA claims as a collective action on behalf of the following class:

> **All of Defendants' current and former exotic dancers/entertainers who worked at the Yellow Rose located in Austin, Texas at any time starting three years before this Complaint was filed.**

## VI.     CAUSES OF ACTION
### FIRST CAUSE OF ACTION

**FAILURE TO PAY MINIMUM WAGE PURSUANT TO THE FLSA, 29 U.S.C. § 206**

**(By Plaintiffs Individually and on Behalf of the Collective Action Against All Defendants)**

94.     Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth paragraphs 1-95 as though fully set forth herein.

95.     Defendants are engaged in "commerce" and/or in the production of "goods" for "commerce" as those terms are defined in the FLSA.

96.     Defendants operate an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), because it has employees engaged in commerce, and because its annual gross volume of sales made is more than five hundred thousand U.S. Dollars ($500,000).

97.     Defendants failed to pay Plaintiffs the minimum wage in violation of 29 U.S.C. § 206.

98.     Based upon the conduct alleged herein, Defendants knowingly, intentionally and willfully violated the FLSA by not paying Plaintiffs the minimum wage under the FLSA.

99.     Throughout the relevant period of this lawsuit, there is no evidence that Defendants' conduct that gave rise to this action was in good faith and based on reasonable grounds. In fact, Defendants continued to violate the FLSA long after they learned that their misclassification scheme and compensation policies were illegal.

100.    Due to Defendants' FLSA violations, Plaintiffs are entitled to recover from Defendants, minimum wage compensation and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest, pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION

### UNLAWFUL TAKING OF TIPS IN VIOLATION OF THE FLSA, 29 U.S.C. § 203

**(By Plaintiffs Individually and on Behalf of the Collective Action Against All Defendants)**

101.    Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in paragraphs 1-95 as though fully set forth herein.

102.    Plaintiffs customarily and regularly received more than thirty U.S. Dollars ($30.00) a month in tips and therefore is a tipped employee as defined in the FLSA, 29 U.S.C. § 203(t), *see also* 29 C.F.R. § 531.50.

103.    At all relevant times, each Defendants is an "employer" or joint employer of Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203(d).

104.    Defendants are engaged in "commerce" and/or in the production of "goods" for "commerce" as those terms are defined in the FLSA.

105.    Defendants operate an enterprise engaged in commerce within the meaning for

the FLSA, 29 U.S.C. § 203(s)(1), because it has employees engaged in commerce, and because its annual gross volume of sales made is more than five hundred thousand U.S. Dollars ($500,000).

106.    Under TIPA:

> [a]n employer may not keep tips received by its employees for any purpose including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not it takes a tip credit.

29 U.S.C. § 203.

107.    Defendants kept a portion of tips paid to Plaintiffs by Defendants' customers in the form of fees, fines, mandatory charges and other payments to management, house moms, disc jockeys, and floor men in violation of TIPA.

108.    Defendants required Plaintiffs to participate in an illegal tip pool, which included employees who do not customarily and regularly receive tips, and do not have more than a *de minimis*, if any, interaction with customers leaving the tips (such as the Club DJs, security, and management). *See* U.S. Dep't of Labor, Wage and Hour Division, "Fact Sheet # 15: Tipped employees under the Fair Labor Standards Act (FLSA)."

109.    The contribution the Defendants required Plaintiffs to make after each shift was arbitrary and capricious and the distribution was not agreed to by Plaintiffs other dancers; but rather, was imposed upon Plaintiffs and other dancers.

110.    By requiring Plaintiffs to pool their tips with club management, including the individual Defendants named herein, Defendants "retained" a portion of the tips received by Plaintiffs in violation of the FLSA.

111.    Defendants did not make any effort, let alone a "good faith" effort, to comply with the FLSA as it relates to compensation owed to Plaintiffs.

112.    At the time of their illegal conduct, Defendants knew or showed reckless disregard that the tip-pool which they required Plaintiffs to contribute included non-tipped employees and, therefore, was statutorily illegal. In spite of this, Defendants willfully failed and refused to pay Plaintiffs the proper amount of the tips to which they were entitled.

113.    Defendants' willful failure and refusal to pay Plaintiffs the tips they earned violates the FLSA.

114.    Defendants kept a portion of tips paid to Plaintiffs by Defendants' customers in the form of fees, fines, mandatory charges and other payments to management, house moms, disc jockeys, and door men in violation of TIPA.

115.    As a result of the acts and omissions of the Defendants as alleged herein, and pursuant to 29 U.S.C. §§ 216(b) and 260, Plaintiffs are entitled to damages in the form of all misappropriated tips, plus interest; as liquated damages, an amount equal to all misappropriated tips, mandatory attorneys' fees, costs, and expenses.

### THIRD CAUSE OF ACTION

#### ILLEGAL KICKBACKS, 29 C.F.R. § 531.35

**(By Plaintiffs Individually and on Behalf of the Collective Action Against All Defendants)**

116.    Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in paragraphs 1-95 as though fully set forth herein.

117.    Defendants required Plaintiffs to pay monetary fees to Defendants and other Yellow Rose employees who did not work in positions that are customarily and regularly tipped, in violation of 29 U.S.C. § 203(m).

118.    Defendants' requirement that Plaintiffs pay fees to Defendants and other Yellow Rose employees violated the "free and clear" requirement of 29 C.F.R. § 531.35.

119.    Because Defendants violated the "free and clear" requirement of 29 C.F.R. § 531.35 as alleged above, they were not entitled to utilize the FLSA's tip-credit provision with respect to Plaintiffs' wages.

120.    Because Defendants violated the "free and clear" requirement of 29 C.F.R. § 531.35, all monetary fees imposed on Plaintiffs are classified as illegal kickbacks.

121.    Plaintiffs are entitled to recover from Defendants all fees that Defendants required Plaintiffs to pay in order to work at Yellow Rose, involving but not limited to house fees.

## FOURTH CAUSE OF ACTION

### FORCED TIPPING, 29 C.F.R. § 531.35

**(By Plaintiffs Individually and on Behalf of the Collective Action Against All Defendants)**

122.    Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in paragraphs 1-95 as though fully set forth herein.

123.    Defendants required Plaintiffs to pay monetary fees to other Yellow Rose employees who did not work in positions that are customarily and regularly tipped, in violation of 29 U.S.C. § 203(m).

124.    Defendants' requirement that Plaintiffs pay fees to other Yellow Rose employees violated the "free and clear" requirement of 29 C.F.R. § 531.35.

125.    Because Defendants violated the "free and clear" requirement of 29 C.F.R. § 531.35 as alleged above, they were not entitled to utilize the FLSA's tip-credit provision with respect to Plaintiffs' wages.

126.    Plaintiffs are entitled to recover from Defendants all fees that Defendants required Plaintiffs to pay other employees in order to work at Yellow Rose, involving but not

limited to forced tip sharing.

## FIFTH CAUSE OF ACTION

### IMPROPER AND WILLFUL VIOLATION OF GARNISHING TIPS, 29 U.S.C. §§ 203(M)(2), 206(A)(1); C.F.R. §§531.52 , 531.59

**(By Plaintiffs Individually and on Behalf of the Collective Action Against All Defendants)**

127.    Plaintiffs hereby incorporate by reference and re-allege each and every allegation set for in paragraphs 1-95 as though fully set forth herein.

128.    Customers bought "funny money" while they visited Yellow Rose.

129.    In each purchase, Yellow Rose would be charged a 2%-3% merchant fee when customers used credit cards as their method of payments by these credit card companies and payment service providers.

130.    When Plaintiffs and other FLSA Class Members would check in, Defendants would charge customer more than the 2%-3% merchant fee in an effort to offset those costs.

131.    Defendants' decision to charge Plaintiffs in this manner was a business decision, rather than a fee directly attributable to its cost of dealing in credit. However, Plaintiffs would receive the funny money from customers. If they exchanged it for cash, the Defendants would take a larger percentage of the exchange than the amount of the processing fee, in essences garnishing the dancers tips for themselves.

132.    As such, Defendants improperly and willfully offset credit tips to recover costs that exceed the direct fees charged by the credit card companies in direct violation to FLSA §203(m)(2). Defendants knowingly and willfully charged Plaintiffs these costs over a business decision, rather than as a fee directly attributable to its cost of dealing in credit.

133.    On an aggregate basis, Defendants' expenses for collecting and distributing

credit card tips to cash, including both credit card issuer fees and expenses for cash-delivery services, always exceeded the offset amount. As such, Defendants deducted more than the legal costs required by law when making such collections and directly violated FLSA §203(m)(2).

134.    Because Defendants violated §203(m)(2), Plaintiffs are entitled to recover from Defendants all charges and costs attributed to the improper and willful "tip-credits" charged upon them.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests of this Court the following relief:

1.  For compensatory damages according to proof at trial of at least $500,000;

2.  For special damages according to proof at trial;

3.  For restitution of unpaid monies;

4.  For attorneys' fees;

5.  For costs of suit incurred herein;

6.  For statutory penalties;

7.  For civil penalties;

8.  For pre-judgment interest;

9.  For post-judgement interest;

10. For declaratory relief;

11. For injunctive relief; and

12. For such other and further relief as the tribunal may deem just and proper.

Dated: August 25, 2022                              */s/* Jarrett L. Ellzey

John P. Kristensen                                  Jarrett L. Ellzey
California Bar No. 224132                            Texas Bar No. 24040864
**CARPENTER & ZUCKERMAN**                            Leigh Montgomery
8827 West Olympic Boulevard                          Texas Bar No. 24052214
Beverly Hills, California 90211                      **ELLZEY & ASSOCIATES, PLLC**
T: 310- 273-1230                                     1105 Milford Street
*kristensen@cz.law*                                  Houston, Texas 77066
(*Pro Hac Vice* forthcoming)                         Telephone: (713) 554-2377
                                                     Fax: (888) 995-3335
                                                     *jarrett@ellzeylaw.com*
                                                     *leigh@ellzeylaw.com*

                                                     *Attorneys for Plaintiffs*


## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury for all such triable claims.

Dated: August 25, 2022                              */s/* Jarrett L. Ellzey

John P. Kristensen                                  Jarrett L. Ellzey
California Bar No. 224132                            Texas Bar No. 24040864
**CARPENTER & ZUCKERMAN**                            Leigh Montgomery
8827 West Olympic Boulevard                          Texas Bar No. 24052214
Beverly Hills, California 90211                      **ELLZEY & ASSOCIATES, PLLC**
T: 310- 273-1230                                     1105 Milford Street
*kristensen@cz.law*                                  Houston, Texas 77066
(*Pro Hac Vice* forthcoming)                         Telephone: (713) 554-2377
                                                     Fax: (888) 995-3335
                                                     *jarrett@ellzeylaw.com*
                                                     *leigh@ellzeylaw.com*

                                                     *Attorneys for Plaintiffs*