UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CANDIS EHDE, CASSANDRA, LONG, and CRYSTAL LONSDORF, *et al.*, | § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | CIVIL ACTION NO. 1:22-cv-00870-RP |
| RPM DINING, LLC, d/b/a YELLOW ROSE, a Texas limited liability company; MIKE PERSINGER, an individual, | § § § § | |
| *Defendants*. | § § | |

## DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULES 12(b)(4)-(6)

Defendants RPM Dining, LLC, d/b/a the Yellow Rose, and Mike Persinger, file this motion to dismiss the Original Complaint (Doc. 1) filed by Plaintiffs Candis Ehde, Cassandra Long, and Crystal Lonsdorf.

Plaintiffs bring suit under the Fair Labor Standards Act ("FLSA"). Defendants move under Rule 12(b)(6) to dismiss: (1) Plaintiffs' time-barred claims; (2) any overtime claim alleged; (3) the Second, Third, Fourth, and Fifth Causes of Action because they fail to allege cognizable legal theories; and (4) various forms of relief that are not available under the FLSA. Defendants also move under Rules 12(b)(4) and (5) to dismiss Mike Persinger from the case because he has not been served in compliance with Rule 4.

## BACKGROUND

Plaintiffs Ehde, Long, and Lonsdorf filed their lawsuit on August 25, 2022. These named Plaintiffs allege that they performed as exotic dancers at the Yellow Rose over various periods of

time. Four additional individuals have since filed consent to join forms.[1]

The basic gist of Plaintiffs' suit is that Defendants violated the FLSA by improperly considering them to be independent contractors as opposed to "employees" entitled to be paid statutory wages. In connection therewith, Plaintiffs assert five causes of action: (1) "Failure to Pay Minimum Wage Pursuant to the FLSA, 29 U.S.C. § 206"; (2) "Unlawful Taking of Tips in Violation of the FLSA, § 203"; (3) "Illegal Kickbacks, 29 C.F.R. § 531.35"; (4) "Forced Tipping, 29 C.F.R. § 531.35"; and (5) "Improper and Willful Violation of Garnishing Tips…."

Plaintiffs requested issuance of summons directed to Mike Persinger and RPM Dining's registered agent, Jon Persinger, at the same address: 6528 N. Lamar Blvd., Austin, Texas 78752. The Clerk issued signed and sealed summons on August 26, 2022. (Doc. 4).[2]

Thereafter, Plaintiffs' counsel never bothered to contact the undersigned to ask whether Defendants would waive service under Rule 4. Instead, on November 1, 2022, Plaintiffs filed a motion for substituted service, complaining that they had "been unable to serve Defendant [RPM Dining] through Mr. [Jon] Persinger" at 2410 Great Oaks Drive in late September 2022, and that Defendants were somehow "evading" service. (Doc. 9, ¶ 2).[3]

Although Plaintiffs' motion said nothing about making any effort to serve Mike Persinger at 6528 N. Lamar (or anywhere else for that matter), the Court granted the motion as to *both* Defendants, ordering that "Plaintiffs may serve Defendants by affixing a copy of the summons and

---

[1] Houston Isabelle (Doc. 5, Aug. 29, 2022); Jaedah Crawford and Claire Dubiel (Doc. 7, Sept. 9, 2022); and Abreeana Espinosa (Doc. 8, Sept. 15, 2022).

[2] As reflected on the Texas Secretary of State's website (Doc. 9-1), the correct address of RPM Dining's registered agent is 2410 Great Oaks Drive, Suite 601, Round Rock, Texas 78681.

[3] To be clear, neither of the named Defendants were 'evading service.' RPM Dining's registered agent—Jon Persinger—was not at his office in Round Rock in late September 2022 because he was on vacation. *See* Declaration of Jon Persinger ("Persinger Dec."), ¶¶ 3-4. And there is no indication in the record that Plaintiffs ever tried to serve Mike Persinger for that matter.

complaint to the primary door[s]" and mailing process to both 2410 Great Oaks and 6528 N. Lamar. (Doc. 10).

## **ARGUMENT**

### I.    **Motion to Dismiss Under Rules 12(b)(4) and (b)(5)**

Rule 12(b)(4) concerns the sufficiency of process itself, *i.e.*, objections to "the form of the process rather than the manner or method of its service." *PCM Sales, Inc. v. Quadbridge, Inc.*, No. 3:14-CV-2806-L, 2016 WL 407300, at *2 (N.D. Tex. Feb. 3, 2016) (citation omitted). "[A] Rule 12(b)(4) motion is proper only to challenge noncompliance with the provisions of [R]ule 4(b) or any other applicable provision incorporated by Rule 4(b) that deals specifically [with] the content of the summons." *Id.*

Rule 12(b)(5) addresses the sufficiency of how process was served (if at all), that is, "'the mode of delivery or the lack of delivery of the summons and complaint.'" *Quadbridge,* 2016 WL 407300, at *2 "Unless the defendant has been served with process in accordance with [Rule 4], a federal court lacks personal jurisdiction over the defendant." *Coleman v. Bank of New York Mellon*, 969 F. Supp. 2d 736, 745 (N.D. Tex. 2013) (citation omitted). "The Court may consider affidavits or declarations in resolving Rule 12(b)(5) motions." *Kitchen v. Walk-On's Bistreaux & Bar*, No. 5:19-CV-01062, 2020 WL 2404911, at *3 (W.D. La. May 12, 2020). "Once the validity of service has been contested, the plaintiff bears the burden of establishing its validity." *In re Katrina Canal Breaches Litig.*, 309 Fed. Appx. 833, 835 (5th Cir. 2009).

### A.    **Plaintiffs failed to properly serve Mike Persinger**

After the Court granted Plaintiffs' motion for substituted service, Plaintiffs deployed two process servers, Michael Forrest and Adriana Adam. According to the returns of service on file,

they both aver that the "Order, Summons in a Civil Action, Plaintiffs' Original Complaint, Consent to Join Collective Action … for service on RPM Dining, LLC, c/o Agent for Service, Jon Persinger came to hand" on November 8, 2022. (Docs. 11 & 12) (capitalizations removed).

Mr. Forrest states that he attached the "above-named documents" to the front door of 2410 Great Oaks Drive and mailed the same by regular mail on November 11, 2022. Ms. Adam states that she attached the "above-named documents" to the front door at 6528 N. Lamar Boulevard and mailed them "via USPS Regular Mail" on November 15, 2022. (Doc. 12).

Based on the process servers' statements, they did not deliver summons bearing Mike Persinger's name to either address, only the summons directed to RPM Dining. Indeed, the documents that have been attached to the doors at both addresses do not contain summons naming Mike Persinger at all. To date, no process whatsoever has been received in the mail at either address.[4]

Thus, the process itself, or the service of process, are insufficient as to Mike Persinger since the only summons that has been delivered identifies RPM Dining. Fed. R. Civ. P. 4(b) ("summons … must be issued for *each* defendant to be served") (emphasis added). Whether addressed under Rule 12(b)(4) or (b)(5), the bottom-line is that even under the more relaxed service methods that the Court approved at Plaintiffs' request, they still failed to properly serve Mike Persinger.

Rule 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."

---

[4] Persinger Dec., ¶¶ 6-9; Exhibit A attached to Jon Persinger's declaration contains all of the documents affixed to the door at 2410 Great Oaks.

Fed. R. Civ. P. 4(m). Since the Complaint was filed more than 90 days ago, dismissal of Mike Persinger is necessary unless Plaintiffs can show good cause for their inexplicable failure to perfect service on him within the specified timeframe. *Id.*; *see also Thrasher v. City of Amarillo*, 709 F.3d 509, 511 (5th Cir. 2013).

## II.    Motion to Dismiss Under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead in her complaint "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp v Twombly*, 550 US 544, 555 (2007)). A two-part test is used to assess the plausibility of a complaint's allegations. First, a court must identify and exclude legal conclusions and conclusory allegations, which "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678-89. Second, a court must assume the veracity of remaining well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement for relief." *Id*. A claim has facial plausibility when the pleaded factual content allows the court, drawing upon its "judicial experience and common sense," to reasonably infer that the defendant is liable for the misconduct alleged. *Id.*

Further, "[d]ismissal under Rule 12(b)(6) is proper not only where the plaintiff fails to plead sufficient facts to support a cognizable legal theory, but also where the plaintiff fails to allege a cognizable legal theory." *Cocchia v. LendingHome Funding Corp.*, No. SA-20-CV-00066-JKP, 2020 WL 1879223, at *1 (W.D. Tex. Apr. 15, 2020).

### A.    Time-Barred Claims

A court can consider a statute of limitations argument in a motion to dismiss if the "limitations defense is clear on the face of the complaint." *Rice v. Interactive Learning Sys., Inc.*,

3:07-CV-0725-G, 2007 WL 2325202, at *2 (N.D. Tex. Aug. 10, 2007). The default limitations period under the FLSA is two years but may be extended to three years upon showing a "willful" violation of the FLSA occurred. 29 U.S.C. § 255(a).

Each of the named Plaintiffs—Ehde, Long, and Lonsdorf—allege that they performed at the Yellow Rose beyond the maximum three-year limitations period:

- Ehde: "approximately July 2017 through March 2020" (Doc. 1, ¶ 2)
- Long: "approximately March 2013 through February 2020" (Doc. 1, ¶ 2)
- Lonsdorf: "approximately January 2017 through September 2020" (Doc. 1, ¶ 2)

These named Plaintiffs filed suit on August 25, 2022, so any FLSA claims that they may have intended to assert arising prior to August 25, 2019, are time-barred and should be dismissed with prejudice.

As for two of the 'opt-in' Plaintiffs—Isabelle and Espinosa—they allege to have performed at the Yellow Rose beyond the respective limitations period as well:

- Isabelle: "approximately March 2018 to September 2020" (Doc. 5)
- Espinosa: "approximately June 2019 to April 2022" (Doc. 8)

Ms. Isabelle filed her consent to join form on August 29, 2022, and Ms. Espinosa filed her consent form on September 15, 2022. As a result, any FLSA claims they intended to assert arising prior to August 29, 2019 and September 15, 2019, respectively, are time-barred and should also be dismissed with prejudice.

## B.    Overtime Claim

Plaintiffs allege that they bring "a collective action to recover the unpaid o*vertime compensation* and minimum wage owed to [them] individually and on behalf of all other similarly situated employees…." (Complaint, ¶ 10) (emphasis added). To the extent that Plaintiffs intended to assert an overtime claim with this lone allegation, it should be dismissed.

"District Courts generally require plaintiffs to include more than generalized and conclusory allegations that they have worked in excess of forty hours a week." *Fernandez v. JaniKing Int'l, Inc.*, CV H-17-1401, 2018 WL 539364, at *4 (S.D. Tex. Jan. 8, 2018), R&R adopted sub nom. 4:17-CV-1401, 2018 WL 542283 (S.D. Tex. Jan. 23, 2018). Here, no alleged facts appear in the Complaint concerning how many months, weeks, days, hours, or shifts that any of the Plaintiffs claim to have worked. Nor are any facts alleged addressing whether any Plaintiff worked more than 40 hours in any given workweek. Any overtime claim contained in the Complaint should therefore be dismissed for failure to state a claim.

## C.    Second Cause of Action ("Unlawful Taking of Tips in Violation of the FLSA, 29 U.S.C. § 203")

A nearly verbatim version of Plaintiffs' Second Cause of Action for "Unlawful Taking of Tips" was recently addressed and dismissed with prejudice by the Eastern District of Wisconsin in the context of a Rule 12(b)(6) motion. *See Fares v. H, B, & H, LLC*, No. 21-CV-753, 2021 WL 4133960 (E.D. Wis. Sept. 10, 2021).[5]

As in this case, an exotic dancer plaintiff in *Fares* asserted the very same allegations, *e.g.*, that she was a "tipped employee," "Defendants required Plaintiffs to participate in an illegal tip pool," and that "defendants violated 29 U.S.C. § 203(m) by keeping a portion of the entertainers' tips in the form of fees, fines, mandatory charges, and other payments to management, disc jockeys, and door men. (Compl. ¶¶ 120–34.)" *Fares*, 2021 WL 4133960, at *4; *compare with* (Complaint, ¶¶ 101-115).

---

[5] A courtesy copy of the complaint in *Fares* is attached as Exhibit B.

After reviewing pertinent authorities, the district court dismissed the "Unlawful Taking of Tips" claim with prejudice, stating that "the FLSA does not provide a freestanding cause of action for 'tipped employees' to recover damages from the improper administration of a tip pool." *Fares*, 2021 WL 4133960, at \*4. The result should be the same here. As explained below in Section E, there is no freestanding cause of action for the improper administration of the FLSA's "tip credit" or "tip pooling" provisions.

**D.    Third Cause of Action ("Illegal Kickbacks, 29 C.F.R. § 531.35") and Fourth Cause of Action ("Forced Tipping, 29 C.F.R. § 531.35")**

Under their Third Cause of Action, Plaintiffs allege that "Defendants' requirement that Plaintiffs pay fees to Defendants and other Yellow Rose employees violated the 'free and clear' requirement of 29 C.F.R. § 531.35," that "all monetary fees imposed on Plaintiffs are classified as illegal kickbacks," so therefore "Plaintiffs are entitled to recover from Defendants all fees that Defendants required Plaintiffs to pay in order to work at Yellow Rose, involving but not limited to house fees." (Complaint, ¶¶ 118-121).

Plaintiffs' Fourth Cause of Action is a redundant version of the Third Cause of Action bearing a different label. It only differs in that Plaintiffs claim entitlement to "recover … all fees that Defendants required Plaintiffs to pay other employees in order to work at Yellow Rose, involving but not limited to forced tip sharing." (Complaint, ¶ 126).

Both the Third and Fourth Causes of Action are built around 29 C.F.R. § 531.35. Located under DOL regulations covering what qualifies as a "wage" and how "wages" must be paid to an employee,[6] § 531.35 explains that if some or all "of the wage delivered to the employee" is "kicked-

---

[6] *See* 29 C.F.R §§ 531.27-35.

back" to the employer, the kicked-back amount does not count towards "wages" paid, which may in turn trigger violation of the FLSA's "wage requirements" under §§ 206 or 207. *Cudnik v. W.L. York, Inc.*, 2021 WL 3674972, at *2 (S.D. Tex. Feb. 5, 2021) ("Kickbacks are not *per se* illegal, but only when such deductions deprive an employee of the federally mandated minimum wage or overtime pay"). As one district court recently explained:

> This regulation provides that expenses paid by an employee for an employer's benefit cannot be included in calculating an employee's wage. For example, if an employee must provide 'tools of the trade,' i.e., if employees must provide their own vehicles and gas to make food deliveries for their employer, 'there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum ... wages required to be paid him under the Act.'

*Rodriguez v. GC Pizza LLC*, No. 4:20-CV-3106, 2022 WL 4368353, at *3 (D. Neb. Sept. 21, 2022) (quoting § 531.35).

**1.    29 C.F.R. § 531.35 does not supply a standalone cause of action.**

First, the Third and Fourth Causes of Action should be dismissed because § 531.35 does not create a freestanding cause of action. *See Cudnik*, 2021 WL 3674972, at *2-3 (granting motion to dismiss the same claim "to the extent kickbacks are pleaded as an independent cause of action"); *see also Kibodeaux v. A&D Interests, Inc.,* 579 F. Supp. 896, 901, n. 2 (S.D. Tex. 2022), mandamus granted on other grounds, *In re A&D Interests, Inc.*, 33 F.4th 254 (5th Cir. 2022) (recognizing that "[t]he latter two causes of action [taking illegal kickbacks, and forced tip sharing] do not arise under the FLSA. See 29 C.F.R. § 531.35").

"Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). Section 531.35 is simply an implementing regulation that articulates a theory for liability under § 206's minimum wage requirement. It is not a statute like § 216(b), which provides the exclusive source of the "right of

action" and remedies for violating the FLSA's requirements. *See Williams v. Sake Hibachi Sushi & Bar Inc.*, 574 F. Supp. 3d 395, 405 (N.D. Tex. 2021), appeal dismissed, No. 21-11287, 2022 WL 2337672 (5th Cir. Mar. 16, 2022). Since the Third and Fourth Causes of Action have been pleaded as independent causes of action untethered from Plaintiffs' minimum wage claim under § 206, they should be dismissed with prejudice.

### 2.    Section 531.35 is not applicable to "tips."

Second, the Third and Fourth Causes of Action should be dismissed because § 531.35 is inapplicable in the context of the Complaint's allegations. This regulation *only* speaks of "wages" and the FLSA's "wage requirements,"[7] *i.e.*, §§ 206 and 207. It makes no mention of "tips," so it cannot be read as somehow implementing any of the Act's "tip" requirements under § 203(m)(2). As one court explained:

> [A]lthough the free and clear regulation implementing § 6 provides that an employer may not require an employee to "kick-back" a part of his wages if the kick-back reduces the employee's hourly wage to below the federal minimum, this "free and clear regulation" is not applicable in this case. The FLSA and the applicable regulations clearly distinguish between payments that constitute "wages" and payments that constitute "tips." Because the plain language of the free and clear regulation only prevents the kick-back of *wages*, the prohibition simply does not apply to tips.

*Platek v. Duquesne Club*, 961 F. Supp. 835, 838 (W.D. Pa. 1995) (internal citations omitted; emphasis original). The *Platek* court's reasoning is sound. Consider how § 531.35's first sentence would read if "wages" were replaced with "tips":

> Whether in cash or in facilities, "[tips]" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear."

---

[7] An employee's receipt and retention of "tips" is a topic addressed under a completely different subpart. *See* 29 C.F.R. §§ 531.50-.60 (Subpart D—Tipped Employees)

If such a reading were adopted, § 531.35 would make little sense. For instance, "wages" are sums "*paid by the employer* and received by the employee...." 29 C.F.R § 531.35 (emphasis added); *see also* 29 U.S.C. § 206(a) (the "employer shall pay" to employees "wages at the following rates..."). While the FLSA does not itself define a "tip," the DOL describes a "tip" as "a sum *presented by a customer* as a gift or gratuity in recognition of some service performed for the customer." 29 C.F.R. § 531.52(a) (emphasis added).

Likewise, § 531.35's second sentence would also have a different meaning if it were altered to include "tips":

> The [tip] requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the [tip] delivered to the employee.

Reading § 531.35 as applicable to the FLSA's "tip credit" requirements (discussed *infra*) would draw the regulation into conflict with the Act's express authorization for employers to implement lawful tip pools that are, by their very nature, arrangements that hinge on redistribution of "tips" to other qualifying employees. *See* 29 U.S.C. § 203(m)(2)(A).

At bottom, § 531.35 does not prohibit "kick-backs" concerning amounts that qualify as "tips;" it only applies to "wages," and it only "prohibits kickbacks that reduce the *wages* paid below the federal minimum." *See Cumbie v. Woody Woo, Inc.*, 596 F.3d 577, 582, n. 13 (9th Cir. 2010) (emphasis original).

### 3.    Plaintiffs only allege that they received "tips," not "wages."

With the foregoing in mind, the related problem with the Third and Fourth Causes of Action is that in order to plausibly invoke § 531.35 as a theory of liability in some form, Plaintiffs would need to allege that at least *some* of the money they received in the course of their work

qualified as "wages" subject to a "kick-back." But Plaintiffs do not allege that they were required to "kick-back" *any* sums that qualified as "wages."

Instead, they allege that *all* of the money they received through their work at the Yellow Rose qualifies as "tips." Plaintiffs say that they "were compensated *exclusively* through *tips* from Defendants' customers," "required … to share [their] *tips* with Defendants and other non-service employees," that Defendant "took a percentage of the *gratuities and tips* earned by [them]," (*id.*, ¶ 8), and "forced [them] to pay their *tips* to other employers, and then pay a percentage of their *tips* to Defendants." (Complaint, ¶¶ 43, 44, 8, 82) (emphases added).

Since there are no allegations that Plaintiffs were paid any "wages" that were subject to a "kick-back," there are no facts alleged that could provide a plausible foundation for any sort of a claim predicated on § 531.35's requirement that "*wages*" be paid by an employer "free and clear." Accordingly, Plaintiffs' Third and Fourth Cause of Action should be dismissed for failure to state a claim.

**E.    Fifth Cause of Action—"Improper and Willful Violation of Garnishing Tips…."**

Under their Fifth Cause of Action, Plaintiffs allege that when customers bought "funny money" (intraclub scrip) from the Yellow Rose with a credit card, the Yellow Rose charged those customers an additional amount to cover processing fees. (Complaint, ¶ 129). Plaintiffs—who presumably allege that customers would then use the club scrip to pay for their various services—claim that once they turned in their scrip for cash, "Defendants would take a larger percentage of the exchange than the amount of the processing fee, in essence[] garnishing the dancers tips for themselves." (Complaint, ¶¶ 128-131). In this way, Plaintiffs allege that "[b]ecause Defendants violated §203(m)(2), Plaintiffs are entitled to recover from Defendants all charges and costs

attributed to the improper and willful 'tip-credits' charged upon them." (*Id*., ¶ 134).

### 1.    Section 203(m)(2)(A) does not provide a cause of action.

The Fifth Cause of Action should be dismissed because it is not premised on a cognizable legal theory. Nothing in the FLSA provisions repeatedly referenced and cited in their Complaint— *i.e.*, "tip credit" and "tip pooling" under § 203(m)(2)(A)—give rise to a freestanding cause of action based on their credit card transaction allegations.

First, the basics. The default rule is that employers must pay most employees at least $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). The "tip credit" allows an employer to pay qualifying "tipped employees"[8] a sub-minimum wage of $2.13 an hour if the employee's tips cover the difference between $2.13 and $7.25 an hour, and so long as other requirements are also met. *See Montano v. Montrose Rest. Assocs., Inc.*, 800 F.3d 186, 188 (5th Cir. 2015); *Hoenninger v. Leasing Enterprises, Ltd.*, 803 Fed. Appx. 756, 759 (5th Cir. 2020) ("Although tipped employees must receive $7.25 per hour, employers do not have to pay the entire amount. FLSA allows employers to claim a tip credit, which counts towards the required $7.25 per hour").

One of the requirements to lawfully maintain a "tip credit" is that "all tips received by such employee have been retained by the employee...." 29 U.S.C. § 203(m)(2)(A)(i)-(ii). However, "tip pooling" is an exception to the tip credit's retention requirement: tips must be retained by the employee "*except* that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips." *Id.* (emphasis added).

Against this backdrop, an alleged violation of the FLSA's "tip credit" provision in any

---

[8] "Tipped employee" means any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips. 29 U.S.C. § 203(t).

form does not provide a plaintiff with a cause of action. That is because the tip credit is just an affirmative defense to a claim that the employer violated § 206's minimum wage requirement by paying a wage of $2.13 an hour. *See Montano*, 800 F.3d at 189; *Gurule v. Land Guardian, Inc.*, No. 4:15-CV-03487, 2017 WL 6885417, at *5 (S.D. Tex. July 7, 2017), aff'd, 912 F.3d 252 (5th Cir. 2018) ("This section does not authorize the recovery of stolen tips for a violation of section 206 of the FLSA"). As the Northern District of Texas recently put it, § 203(m)(2)(A) simply "provides conditions on whether an employer can claim a tip credit, but it does not provide a separate cause of action or remedy when an employer violates those conditions." *Williams*, 2021 WL 5743164, at *7. And since "tip pooling" is basically an appendage of the "tip credit," implementing or allowing an "illegal tip pool" as Plaintiffs allege (Complaint, ¶¶ 45, 108, 112) does not itself yield a viable cause of action under the FLSA under § 203(m)(2)(A) either.

> **2.    Alleging unlawful imposition of credit card fees does not change the equation.**

Plaintiffs' Fifth Cause of Action also appears to be drawn from a misreading of *Steele v. Leasing Enterprises, Ltd.*, 826 F.3d 237 (5th Cir. 2016). In *Steele*, the Fifth Circuit addressed whether an employer may deduct credit card processing fees from sums that qualify as "tips" and still rely on the "tip credit" defense. *Id.* at 244. As the *Steele* court explained, "[c]redit card fees are a compulsory cost of collecting credit card tips" and "an employer only has a legal right to deduct those costs that are *required* to make such a collection." *Id.* at 244-45 (emphasis original). However, the employer in *Steele* deducted sums that were not required to collect credit card tips, so it was "divested of its statutory tip credit for the relevant time period." *Id.* at 246.

So, even if Plaintiffs' allegations related to the Fifth Cause of Action are accepted as true, they do no more than assert a reason why Defendants would not be able to assert the "tip credit"

defense to their § 206 minimum wage claim. Plaintiffs seem to acknowledge this dynamic in the Complaint, *e.g.*, "[b]ecause Defendants violated the tip-pool law, Defendants lose[] the right to take a credit toward minimum wage." (Complaint, ¶ 45). Be that as it may, the alleged inability of Defendants to rely on the "tip credit" or "tip pooling" defense does not give rise to some sort of 'super'-minimum wage cause of action, nor does it entitle Plaintiffs to relief beyond what § 216(b) provides.

## F.    Requested Forms of Relief

Finally, under their "Prayer for Relief," Plaintiffs seek various forms of relief that are not available to private FLSA litigants. The following requests for relief should be dismissed from the Complaint. *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970 (9th Cir. 2010) (affirming dismissal of legally deficient requests for relief); *see also Cudnik*, 2021 WL 3674972, at *2.

### 1.    Special Damages

Although the Federal Rules of Civil Procedure do not define "special damages," FED. R. CIV. P. 9(g), "it has been construed to mean 'those elements of damages that are the natural, but not the necessary, consequence of defendant's conduct, and usually stem from the particular circumstances of the case.'" *NTBS Storage & Retrieval, Inc. v. Kardex Sys., Inc.*, CIV.3:98CV0996-M, 2001 WL 238110, at *1 (N.D. Tex. Mar. 30, 2001).

Nothing in the FLSA entitles a plaintiff to "special damages." *See, e.g.*, *Powell v. Carey Intern., Inc.*, 514 F. Supp. 2d 1302, 1324 (S.D. Fla. 2007) (observing that although "the FLSA is a remedial statute, and it must be interpreted broadly, its reach is still cabined by the statutory language" and "does not allow recovery of compensatory damages for emotional distress"). The request for "special damages" should be dismissed with prejudice.

2.    Restitution

Plaintiffs have not pleaded a cause of action that might give rise to the equitable remedy of restitution. *See Mowbray v. Avery*, 76 S.W.3d 663, 680 (Tex. App.—Corpus Christi 2002, pet. denied). A claim for restitution predicated on conduct that is addressed by the FLSA and for which the Act provides a remedy would be preempted in any event. *See, e.g.*, *Lilani v. Noorali*, CIV.A. H-09-2617, 2011 WL 13667, at *11 (S.D. Tex. Jan. 3, 2011) ("the court will grant the motion to the extent [plaintiff] seeks restitution for unpaid minimum wages and for overtime compensation because those claims are preempted by the FLSA"). This request for restitutionary relief should be dismissed with prejudice.

2.    Pre-Judgment Interest

Plaintiffs' request for pre-judgment interest should be dismissed with prejudice. It is well-established that pre-judgment "interest is not available for FLSA claims, like this one, that seek compensation for unpaid … wages and liquidated damages." *Champion v. Phaselink Util. Sols., LLC*, No. SA-22-CV-00145-JKP, 2022 WL 3693461, at *10 (W.D. Tex. Aug. 24, 2022).

3.    Civil Penalties

Plaintiffs are not entitled to recover "civil penalties" because "the FLSA does not include civil penalties among the damages which a private plaintiff may collect for an employer's violation of the FLSA's minimum wage provisions." *Johnson v. Chipotle Mexican Grill, Inc.*, No. 3:20-CV-2793, 2021 WL 3166394, at *2 (N.D. Ohio July 27, 2021). Collecting a civil penalty is reserved for the Secretary of Labor "as the Secretary determines appropriate." *See* 29 U.S.C. § 216(e)(2); 29 C.F.R. § 580.18 ("the amount of the penalty as thus determined is immediately due and payable to the U.S. Department of Labor"). Since Plaintiffs are not representatives of the government, this

request for relief should be dismissed with prejudice.

    4.    <u>Declaratory & Injunctive Relief</u>

Plaintiffs also ask for injunctive and declaratory relief. However, the FLSA provides that only the Secretary of Labor may pursue injunctive relief "to restrain violations" in limited circumstances. 29 U.S.C. § 211(a); *see also* 29 U.S.C. § 217. Thus, "private litigants do not have a right to seek injunctive relief under the FLSA." *Coleman v. Louisiana Dep't of Veterans Affairs Nw. Louisiana War Veterans Home*, CV 15-2912, 2017 WL 7049111, at *3 (W.D. La. Dec. 11, 2017), R&R adopted sub nom. 2018 WL 539335 (W.D. La. Jan. 24, 2018); *see also Barrentine v. Ark.-Best Freight Sys., Inc.*, 750 F.2d 47, 51 (8th Cir.1984) ("[O]nly the Secretary is vested with the authority to seek an injunction"). And because declaratory judgments operate like injunctive relief, that remedy is not available either. These requests for relief should be dismissed with prejudice.

## **CONCLUSION**

For these reasons, Defendants RPM Dining, LLC, d/b/a the Yellow Rose, and Mike Persinger, ask the Court to grant this motion, dismiss Mike Persinger, Plaintiffs' time-barred and overtime claims, their non-cognizable Second, Third, Fourth, and Fifth Causes of Action, and unsupported requests for relief.

[signature block on next page]

Respectfully submitted,

WALLACE & ALLEN, LLP

_/s/ William X. King_
Casey T. Wallace
State Bar No. 00795827
William X. King
State Bar No. 24072496
440 Louisiana St., Suite 590
Houston, Texas 77002
Tel: (713) 227-1744
Fax: (713) 600-0034
cwallace@wallaceallen.com
wking@wallaceallen.com
**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document has been served on counsel of record in accordance with the Federal Rules of Civil Procedure via email and/or filing through the Court's ECF System on December 2, 2022.

Jarrett L. Ellzey
Leigh Montgomery
ELLZEY & ASSOCIATES, PLLC
1105 Milford Street
Houston, Texas 77066
Tel: (713) 554-2377
Fax: (888) 995-3335
jarrett@ellzeylaw.com
leigh@ellzeylaw.com

John Kristensen (Pro Hac Vice)
California Bar No. 224132
CARPENTER & ZUCKERMAN
8827 W. Olympic Blvd.
Beverly Hills, California 90211
Tel.: (310) 507-7924
Fax: (310) 858-1063
kristensen@czrlaw.com
**ATTORNEYS FOR PLAINTIFFS**

*/s/ William X. King*
William X. King